Good morning, Your Honors, and may it please the Court, Deputy Federal Public Defender Alexandra Yates, on behalf of Lucio Hernandez, who is challenging his conviction for interstate transportation of firearms. Your Honors, the specific question for the Court in this case is what willfully means in a section 922A3 prosecution. But the ramifications of the ruling that the government wants, that willfully means an intent to commit any unlawful act, even one, not charged, would not be limited to 922 offenses, and it would be wholly unprecedented. Indeed, it would create a split with the Seventh Circuit, which specifically rejected a similar argument that intent to violate one law is as good as the intent to violate any other, and that's the Pelungan case we've cited. Why wasn't this issue waived? On the excerpt of the record, 963, counsel says, if I have it right, I'm in complete agreement with the jury instruction that Your Honor is going to give, in which the parties have requested and agreed upon. Yes. In which the parties have requested and agreed upon. That was the language from Brian that the Court did use, and Mr. Hernandez agreed that that was appropriate language, but asked for something more. Said in this particular case, that is insufficient, because the government is making this argument here that intent to commit these three other uncharged acts can substitute for the intent to commit the actual charged act. And so we need to explain this better to the jury. Well, doesn't he have to preserve on the record his objection to the trial court's refusal to give his proposed jury instruction number four and number six? Maybe it's not number four and number six. That's on the dual residency, but on this heightened standard of willfulness? So the heightened standard of willfulness, he did each standard, but including the heightened standard of willfulness, he presented in his the district court. There was certainly no dispute in district court about Mr. Hernandez's position. I mean, counsel repeatedly said to the court, Your Honor, the government cannot prove its case by substituting this intent. Your Honor, they must prove intent to commit this actual offense. Counsel, I don't see in the instructions that the district court gave. I mean, it looks to me like it's pretty much a Brian instruction. I see that the government argued that you can prove it by intent to do anything else unlawful, including uncharged acts, but I don't see that that's actually part of the instruction. So help me figure out what I'm missing here. Yes, Your Honor. I think in your typical case where the government wasn't making those sorts of arguments, perhaps this instruction would be fine. But we have to look at the instructions as a whole and whether they are misleading and inadequate in this particular case. And in this particular case where the instructions were specifically formulated by the court. So where's the corrected instruction that you requested? The instruction that we requested, Your Honor. Yeah. That would be number one. Exactly, Your Honor. Therefore, in order to establish a willful violation in this case, the government must prove beyond reasonable doubt that when Mr. Hernandez transported firearms purchased in Arizona to California, he knew that his conduct was unlawful and he intended to disobey the law. Okay. That's a little bit different from the problem that you've got with the government. In other words, it might have cured that, but you've asked for something quite specific. You've asked for something that looks like it might have been rejected in Brian and may have been rejected at least subsequent to Brian in our cases. So I don't see in here that you said it's not sufficient that he knew that he was doing something wrong that didn't have anything to do with what he's been charged with. Your Honor, is the court referring to the Cheek Ratsliff standard? I'm not sure. The hate and willfulness standard. I think part of the confusion perhaps I'm sorry. You said Cheek and Ratsliff. Yes. Yeah. Sure. That's what this looks like. This looks like this comes very close to being a Cheek Ratsliff, which looks like we've rejected in subsequent cases dealing with 922 or 924. But this, so this might have cured the problem you're describing, but this isn't sort of the what is essential to cure the problem that you're describing. And I think you could have cured it with a different instruction that still would have been consistent with our cases. Your Honor, I respectfully disagree that this court has resolved the Cheek Ratsliff question. But let's put that to the side because I think the bigger problem in this case is the transferred intent issue. It was not at the time the parties were proposing the instructions, it was in no way, shape or form clear that the government was using this novel transferred intent theory at trial. That only came up just days before the trial itself. And as soon as that became clear, counsel immediately objected and repeatedly said, both in pretrial hearings at the Rule 29 hearing and in discussion of instructions, that that's wholly inappropriate and not permissible. The instructions were proposed before trial began? Correct, Your Honor. I believe so, Your Honor. Yes, Your Honor. And, Your Honor, so it's more than just the Cheek Ratsliff problem. The government here was permitted to and encouraged the jury to substitute intent, substitute intent from one actus reus to another. And that's just completely wholly unprecedented, would create a circuit split if it was permitted. And even if the defense's proposed instructions did not convey that with sufficient specificity, we know from this Court's Hunter case that we cited in our briefs, that if the issue is raised, it is up to the district judge to reformulate the instructions to properly instruct the jury. Could I just read you from 965 of the transcript, of the excerpts of record? The Court says, well, Mr. Bell says, he cannot have a purpose to commit an entirely separate crime at an entirely different time and place. The Court says, no, yes, he can. That's precisely the point. He can. In other words, if he has any bad intention, any bad intention will do. Any bad intention will get you get to the willful point. Doesn't have to be that he's committing. And Mr. Bell says, I agree with Your Honor entirely. I think that we're actually saying the same thing. I believe it's still the government's burden at the time he crosses, at the time he buys those firearms and brings them to California, it's then. So the question is, how is that consistent with what you're arguing? Taking that quote out of the context of the entire trial, there was some perhaps inartful language to use. If you look at the argument as a whole, and just two pages later, here's what the defense says at 967. It is trying to put him on trial for a different crime, and I do not believe that Bryan stands for the proposition that you can charge a defendant with this particular crime and intend to prove your case entirely through evidence of other bad acts. The positions were clear. The government then, shortly thereafter, says to the Court, Your Honor, before we get to closing arguments, I just want to make sure that the defense is admonished not to or that the Court will make sure that there's not an impropriety here because the defense clearly has a very different position on what Bryan means than we do, and I don't want that to come through in argument. So there was really no dispute at trial as to what the party's positions were on this matter. I'm a little confused now. The instruction, the jury was instructed that a person acts willfully if he acts intentionally and purposely with the intent to do something the law forbids, that is, with a bad purpose to disobey or disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the intent to do something that the law forbids. Is that the instruction or? That is the instruction at issue. And in your typical case, that would not necessarily be problematic. Right. That instruction would not be problematic. The problem here is that the government proceeded on a theory that Mr. Hernandez was guilty if he had the intent to do one of three uncharged acts, and that is specifically the argument it made to the jury, and that is the evidence it presented to the jury. So this intent to do something the law forbids, the something is problematic in that context, because here that something could be a whole different. But is the problem with the argument or the problem with the instruction? Well, the problem is the instruction in light of the argument. The instructions cannot be misleading or inadequate in a particular case. And simply because the Bryan Court said that the instruction given here was appropriate in one case does not mean it's going to be appropriate in every case. And this Court has been very clear that pattern instructions and model instructions need to be modified if the facts so require. So where the jury is being presented with and argued to that facts of other uncharged acts are sufficient to demonstrate willfulness, the jury needs to be informed that it cannot convict the defendant unless they find that he had the actual mens rea to commit this particular act. If I may, Your Honors, there are additional problems that even putting aside the willfulness instruction are at issue here, two of them being instructions regarding knowledge and dual residency, neither of which was given, and both of which were specifically requested. In fact, with respect to knowledge, the parties agree that the government was required to prove knowledge of the facts that constitute the offense. One of those facts was that Mr. Hernandez was not an Arizona resident. The jury was never instructed that it needed to find this element. The government effectively concedes that this is error but says it's harmless. But the lack of instruction there can't be harmless. It's not clear beyond a reasonable doubt that the jury would have rejected the ample evidence that Mr. Hernandez could have believed he was an Arizona or a dual resident. With respect to dual residency, the jury was never instructed how dual residency was relevant to its decision. The government on appeal concedes dual residency was relevant but says it was only relevant to willfulness. But even if that's correct, the relevance of dual residency was not explained to the jury at all, and it was relevant to more than willfulness, and in fact, it would create a circuit split for this Court to say otherwise with the Seventh Circuit and the Second Circuit, the only other two circuits to address the issue who both said dual residency can be a defense if someone's not trafficking in guns, and of course, whether Mr. Hernandez was trafficking in guns was a disputed factual matter at trial. If the Court doesn't have further questions at this time, I'd like to save my time for rebuttal. You may do so. Thank you. Mr. Muhammad? Thank you, Your Honor. May it please the Court, Yasin Muhammad representing the United States. Good morning, Your Honors. So really, the overarching theme seems to be in this appeal that the defendant made a series of strategic decisions. He didn't like the outcome of those strategic decisions, and he wants a do-over. Many of these issues were waived as the Court's question, Judge Smith's questions alluded to. And a couple of the – one of the other sites that Judge Smith did cite to two of the points in the record where the defendant conceded and waived this point of Bryan, that the Bryan instruction was the correct instruction. But another thing that the defendant said below, and that's at ER 445, was that the gun laws are not such a complex regulatory scheme that the defendant need know of the specific statutory subsection. He only needs to know that what he's doing violates the law, and in a more general sense, that it violates some law. And that's very important, because that goes exactly to what Bryan – What's the – what's the extent of the government's – of the government's theory here? I have to say that the government's – the government's theory that you just have to be able to prove to the jury that you had bad intent as you crossed the State line to do something, but not necessarily what you've been charged with, just strikes me as bizarre. So if he was – if he was carrying guns and a young girl in violation of the Mann Act across State lines, but wasn't charged with the Mann Act, under the government's theory, he could still be convicted, right? No, Your Honor. I think the government's theory is that he has to violate some law and it has to be in connection with the crime that he's charged with. And that's what happened in Bryan. In Bryan, there was no evidence that he knew that unlicensed – the defendant in Bryan knew that unlicensed dealing was against the law. But the evidence that the government used in Bryan to show the bad intent was the fact that he was having straw purchasers lie on forms to make – to purchase these guns that he would sell. There was evidence that he was promising these straw purchasers that he would obliterate serial numbers. Those are all different crimes. Let me ask you this. I mean, I've given this instruction dozens and – dozens and dozens of time. And the way I always understood it was that if you're charged with this crime, it could have been the defendant's intention. He might not have specifically been intending to – to violate this law, that is, to cross the state lines to bring guns back into his residence, but he might have been intending to sell those guns illegally or he might have been intending to do some other – some other crime. And the jurors could – could actually disagree on that – on that point. Some could think he was just trying to bring them across state lines illegally. Some could think he was trying to do some – something else or a third thing. As long as it's all connected to the same act and he – they find that he had a bad purpose in – in doing the act, he's presumed to know what the law is. That's the way I've always thought it – it worked, in that you didn't have to have agreement of the – of the jury that the bad purpose he had in mind was to actually cross the state line with these guns back into his residence. And the jury had to unanimously agree on that point. We never tell juries that. I completely agree with the Court, Your Honor. And, in fact, here there was overwhelming evidence that he actually was trying to circumvent the California gun laws, even putting the – the redistribution, illegal redistribution aside. I mean, we go back to the purpose of this law and it's to respect one's state laws concerning, you know, what – what gun possession should be. There was evidence from which the jury could infer that he knew that he couldn't buy multiple firearms at one time. I mean, he – this gun show that he went to in Arizona was in his backyard the week before, yet he took a trip that was a 48-hour trip, 24 hours of it was a commute. He went and bought these five guns at one point. And the jury knew from – from Mr. Kennedy's testimony, the jury knew that he would have had to wait 160 days in California to do that. He brings these – and he did – and he also knew of the wait periods. He brings them back into California and claims that just days later they were stolen from his garage floor and he never reported the theft of approximately what he claims to be 20 guns stolen. And when he did report – reported to the police, it was only after ATF came asking about the guns months later. And he – and when he – when he told the – excuse me. He told the ATF that the guns – that some of the guns had been stolen. But when he reported it to the police, he said nearly 20 guns had been stolen from his garage in 2011 – in January of 2011. Yet many of those guns that he had purchased, there was evidence of 17 guns that he had purchased. And many of those guns were found prior to when he allegedly said they were stolen. There is so much evidence of redistribution here, Your Honor. There's so much evidence that he knew of the California gun laws. There's evidence that several of the guns that he bought were illegal for sale in California. Could I shift gears on something? Because this dual residency topic is – seems like a – like a big issue and it appears to me like the defendant is asking the Ninth Circuit to really wade into the Heckler and Mateo line of cases. But it – I'm wondering if this isn't waved. And I'm trying to make sense of the statement in the transcript where there's a – you tried this case, right? Yes, Your Honor. So you say on the record, we've reached agreement with respect to the jury instruction on residence. And then you say, and the government has gone ahead and agreed on the first three paragraphs, not the fourth paragraph. And when I look at the instruction, there are three paragraphs there. But I went back and looked at the proposed instructions and it looks like what the defendant didn't get was instruction four and instructions proposed four and proposed six. I don't understand what that means. We agreed to the first three paragraphs but not the fourth. What does that mean? Well, Your Honor, what happened is the judge, the trial judge, asked us to go back and if we could agree on an instruction, the judge would give it or the judge would formulate, I believe, his own instruction. So we agreed on the first three paragraphs. The government did not believe that the other two that the court just referred to actually comported with the law because they basically said that dual residency is a complete defense, which the government has argued cannot be the law. It doesn't comport with Mateo or one – But what's the fourth paragraph of what, that reference, the fourth paragraph? There was – I believe that the defense had proposed an additional paragraph, Your Honor. Is that the record? Because I'm trying to figure out what if it's – what was the defense waiving if they said – you know, if you said we're not agreeing to the fourth paragraph and then they don't object, that sounds like a waiver, but I don't know what that fourth paragraph is. And, Your Honor, I would – I have the record. I can go back and look at it, but it would take me a little bit of time because it would take a while to – But you think it's the substance of proposed instruction four and six? It probably would be. I would imagine that's what it would be because what I remember from the proceedings below is that the dispute was really centered on whether dual residency can serve as a complete defense. And so I remember that that was sort of the main dispute that we were having. Okay. And so we did propose a joint instruction. And when – I think when the Court takes a look at the elements, the state of residence instruction and the willfulness instruction, those taken together, the defendant was free to actually argue that he believed he was a dual resident and that defeated willfulness. We don't believe that was a good argument and the jury didn't believe it, but he was free to argue that under those instructions. To say that dual residency is a complete defense actually contradicts Mateo. That's a Second Circuit case. And I believe Mateo got it right because if dual residency was a complete defense, then the defendant in Mateo, who was engaged in unlicensed distribution, would have been – his conduct would have been legal. We were to disagree with you and agree with the Seventh Circuit's decision in Heckler. What does that do to your theory? Well, Your Honor, I don't believe 1 Heckler is actually inconsistent with Mateo because in 1 Heckler, if you notice, there's just no evidence of willfulness there in 1 Heckler. You read the opinion and it doesn't seem like there's anything going on that shows willfulness there, where here you have plenty of evidence of willfulness, a bad motive, a bad intent. So those two really – Well, if there was no evidence of willfulness, then why would it have – why would the Court have gone off on the dual residency question? Well, what the Court did was it found that the dual residency in that case defeated willfulness. I think that's essentially what 1 Heckler was saying. And 1 Heckler can be read consistent with Mateo because what was happening in 1 Heckler was that the Court was saying, hey, you have this dual residency and that's why we don't think that he had any bad motive or bad intent. But it really – it really boils down to willfulness. I mean, dual residency is a consideration, and that's why the government was in complete agreement that, you know, dual residency should be a part of the jurisdiction. If the jury had found that Mr. Hernandez was a resident of Arizona, could he have been convicted? I believe he could have because the elements of the crime require that he's not licensed as a manufacturer, dealer, or collector. And the second thing is that he transported these firearms purchased or, you know, obtained outside the State into his State of residence. Those are the elements of the crime. So what the government had to prove there was that – So if he was a resident of Arizona, where would – where would the crime have been? The crime would have still been – so if there was evidence, as I think there is in this case, there was evidence that the defendant was acting to disregard California's gun laws, and he was bringing guns into California, which was his State of residence, even if he was a resident of Arizona, if he was bringing them into California as a California resident, then he would have been in violation of 922-A3, because – You're basically saying that you – even if you were a dual residence, that doesn't give you a carte blanche to transport guns from one State of your residence to another State if your intention is to do something to, you know, to violate the law. That's basically what you're saying. And I was trying to think of what could the judge have done, and I think he could have maybe said further on these instructions, if you find the defendant has dual residency but didn't have a bad purpose, then you must find him not guilty, but if you find he has dual residence and he did have a bad purpose, then you find him guilty. And that would be – that would be consistent with the idea of dual residency and come back to the question of willfulness. And I believe the Court is right about all of that, but was it an abuse of discretion not to give that additional instruction? Was that the instruction that was requested? No, that was not the instruction. Is there any place in here where the jury was asked to find whether he was a resident  No. The jury was not asked to find whether he was a resident of Arizona. If the jury was never asked, how can we even get to the question if the jury was – if the jury never – was never required to find that he was – that he was not an Arizona resident? I mean, if he's not an Arizona resident, then the government looks to me like the government's home free. If there's any possibility that he's an Arizona resident, then it looks like it gets a little more complicated. Well, Your Honor, and on that point, I would say that actually the elements of the crime really focus on whether he's a resident of the state into which he's bringing the firearms. See, if he's a resident of the state, that's all that we are required to prove. The Arizona part of it really went to the willfulness. I'm a little confused by the argument, counsel, in light of – in light of the regulation. The regulation gives this example about having the hunting cabin and taking it from a place where you live, you know, up to the summer – up to the summer place. So I'm not exactly sure that I understand your argument. Because – and, Your Honor, I would go back to Mateo on that. Because in Mateo, the defendant was a dual resident. But he wasn't bringing a gun into his state of – You might be better – you might be more persuasive to me if you argued it on the basis of Heckler. Well, okay, Your Honor. In Heckler, the defendant was bringing it into his state of residence from one – from one state of residence to another for a completely permissible purpose. There was no bad motive or intent. In 1 Heckler, if the defendant was bringing it over – bringing over his gun to actually engage in unlicensed dealing or to violate his other state's gun laws or for another bad purpose, then 1 Heckler, that defendant would be – there would be a problem there. But that wasn't – those weren't the facts in 1 Heckler. In 1 Heckler, the whole issue was that there was no willfulness. There was no bad intent. He was allowed to bring it over. And, you know, dual residents are allowed to do that if there's no bad intent. Right. But it certainly – if you've got a dual resident, it certainly focuses the jury and everybody else's attention as to what the intent was when he crossed the state line. And I believe that the court – the trial court did give an instruction on a defendant – And if you don't ask the jury here to find whether he was an Arizona resident, then it looks like the jury has a lot more – a lot wider range of motives that it might conceivably consider before it convicts him. Well, Your Honor, the trial court did give an instruction on dual residency defining what dual residency was. And a person is permitted to be a dual resident. And if Your Honor wants, I can go back to that instruction. No, I've seen the instruction. I've seen it. And I believe that the defendant can argue that there's no willfulness based on dual residency. But, in fact, there was no evidence of dual residency here. There was no evidence that he was an Arizona resident in this case. Well, that's not true. Counsel, he had an Arizona driver's license. He had lived in Arizona. His wife testified that they were temporarily in California to take care of her sister and that they intended to return to Arizona. Your Honor, when he was given the choice in 2010 to move from Idaho to Arizona or move to California, he left his job to move to California. Right. And they explained that there was a family reason. I mean, you know, we've got also the question as to whether there's a domicile question versus a resident's question. He may well be an Arizona domiciliary even if he's a California resident. He didn't own any property in Arizona, Your Honor. All he had was the Arizona driver's license that expired in 2048. Under the domicile rules, all you have to show is that you are physically present with the intent to remain. If he did not have an intent to remain in California, then he may be a resident but he's not a domiciliary. Okay. That's fine, Your Honor. But my argument is that the instructions that the court did give on dual residency, the instructions the court did give on the elements and willfulness, the defendant had enough there to argue that he wasn't acting willfully and that he was a dual resident. You know, there were some facts that he did argue. The government argued against those with the facts that the government had in terms of, you know, all of his belongings being in California and him being in California for the past three years and so forth. One of the reasons for the trip that they took other than purchasing these guns was that they transferred their car registration from Arizona to California. That was one of the reasons they took the trip. So I think the evidence was pretty overwhelming on the government side on this issue. I agree with the court there may have been an issue. But the instructions were sufficient. The jury had to consider that. And the jury did. The jury was asked to consider that, the dual residency issue. And it did consider it and it rejected it. And I believe the jury was right on that. But as far as whether the court abused its discretion in not giving a further instruction, I don't think the court did. There was enough there for the jury to consider all the issues. You're well over your time, Mr. Mohamed. I apologize, Your Honor.  Thank you, Mr. Mohamed. Ms. Yates. Your Honor, the defendant is entitled to a theory of defense instruction. If the theory is legally sound, the evidence in the case makes it applicable even if that evidence is weak, insufficient, inconsistent or of doubtful credibility. And as Judge Biby pointed out, there was plentiful evidence here that Mr. Hernandez was a dual residence or certainly that he believed himself to be a    The evidence is not in the case. The evidence is not in the case. Where do I find the instruction that the district court should have given? Yes, Your Honor. That is an excerpt of record. 369 and 377. First at 369, the law does not prohibit the transportation of a firearm between two states by a person with residence in both states. And then at 377. If you have a reasonable doubt as to whether Mr. Hernandez knew that he was not a resident of Arizona, then you must find him not guilty. If you have a reasonable doubt as to whether Mr. Hernandez believed that he held dual residency in California and Arizona, then you must find him not guilty. So can you tell me why that, again, that isn't waived when the government says we've reached agreement with respect to the jury instruction on residence? The court says okay. The government, Mohamed says first three paragraphs, not the fourth. That's fine? Yes. And there's no objection? Yes. Actually what was happening there was the government was waiving something and I direct the court to excerpt of record page 925. That's where you can find the fourth paragraph of that instruction. What had happened? 925? 925. The district court had already rejected Mr. Hernandez's proposed theory of defense instructions, the ones I just read. That had already been resolved. The court then instructed the parties to get together and come up with a definition of state of residence. Parties attempted to do so. The government wanted this fourth paragraph to be part of it. The government then agreed not to include that fourth paragraph, which was language saying you can't transport from between two states for an unlawful purpose even if you are a dual resident. It was an affirmative anti-dual residency instruction. But the court had already rejected our theory of defense instruction at that point. But don't you have to preserve your objection? Well, certainly we did, Your Honor, by seeking the instruction and having the committee rule against us on that proposed instruction. But we did preserve the matter. This was purely about the definition of state of residence was what the court then was asking the parties to come together and define. The government wanted to throw in this other part and then said, okay, we won't bother doing that. We, of course, didn't object to the government withdrawing that instruction, which we thought was improper. But I don't see how that waves are already clearly made and ruled upon request for the dual residency instruction. Of course, I will remind the court that with respect to both this and the willfulness issue, a waiver has to be intentional. There's absolutely no strategic reason why Mr. Hernandez would have waived either the general willfulness issues or the dual residency issues. And I think if the court reads the defense counsel's comments as a whole throughout the trial, it's certainly apparent that that was never the intent at all. And I don't believe that any of the parties in district court thought as much. With respect to dual residency as well, Mr. Muhammad argued that the jury had this instruction on what dual residency was. The jury was never told how it could use that. There was absolutely no instruction informing the jury what they were to do if they found Mr. Hernandez a dual resident. And, in fact, the jury had a question about dual residency, and that came out right after closing arguments. And so it's certainly not clear that an error here was harmless in any way, shape, or form. In fact, if Mr. Hernandez was, in fact, a dual resident or at least believed himself to be one, he did not have an unlawful purpose in bringing these firearms into California. There is no law prohibiting a person other than the state of residency rule from bringing these firearms into California. The only illegality would be purchasing them in California. At least one of them is not legal for sale in California. Isn't that an unlawful purpose, bringing it back into the state because it's a gun I can't have in California? It is a gun you can have in California. It's simply a gun you can't purchase in California. And let me just explain why. And this is in the record that one of these models of guns that Mr. Hernandez purchased wasn't drop tested, which effectively means someone stands in a lab and drops it hundreds of times. So let's say it's to avoid the waiting period. Isn't that an unlawful purpose? Well, there is no purpose to avoid the waiting period if you are a dual resident. If Mr. Hernandez was both a resident of Arizona and California, it was completely lawful for him to purchase five firearms in Arizona under Arizona's laws using his Arizona ID, his true name, et cetera, et cetera. He was not a prohibited person. And then travel to his second residence with those guns. And in fact, Section 926A, which was also enacted as part of FOPA, specifically says that unless there is that putting aside the state of residence issues, a person can travel between two states with their lawfully purchased firearms. So there's nothing that makes transporting these firearms into California inherently lawful. They weren't machine guns or some sort of gun. But that's what it all comes back to willfulness. That's the whole point, isn't it? That if the purpose is to do something that's illegal, like avoid waiting periods or sell guns to be prohibited persons or whatever it might be, then the transportation across state lines into your state of residence would be with a bad purpose. It would violate the statute. But if your purpose is just I found a gun in Arizona that I really want to have in my collection and I'm going to keep it in California, then it's not with a bad purpose. But there was two points, Your Honor. First, there was no bad purpose if Mr. Hernandez was a dual resident. Okay? He couldn't have had that bad purpose to bring them in because it would have been completely lawful. Well, that's the point. You want it to be a categorical carte blanche defense if you have two residents. And so what it becomes is a way to avoid California's or any other state's gun laws is all you have to do is set up a residence in an adjoining state or any state that has a more favorable gun law and transport your guns into that state. That's basically what you're saying. Your Honor, even taking an exception to the hard and fast rule as a given, even going with what Mateo says, saying that you can't do it for an unlawful purpose, the jury still may well have misunderstood that it was an unlawful purpose to bring these guns into California if Mr. Hernandez was a dual resident. It was never explained to them that his potential dual residency might have negated any unlawful purpose here because there was simply nothing unlawful about it otherwise. So even conceding that if someone is setting up another residence so they can traffic guns in, the jury was not required to find that Mr. Hernandez was a gun trafficker. And, in fact, the judge, after hearing all the evidence, said, I don't see anything to say he is. So I don't think that that's quite the situation we have here. That was a question for the jury, but that was taken away from the jury, and they were never given the opportunity to decide that. I see I'm over my time. Are there any further questions? Thank you, Ms. Yates. We thank both counsel for the argument in a very interesting, very difficult case. It was very helpful. Thank you. The next case on the oral argument calendar is Jennings v. Rommel's Properties.
judges: Schroeder, Bybee, Smith